IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRYNA DOCHAK, et al., | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) No. 15 C 4344 |
| | ) |
| POLSKIE LINIE LOTNICZE LOT S.A., | ) Judge Virginia M. Kendall |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are a group of individuals who purchased airline tickets from Defendant Polskie Linie Lotnicze LOT S.A. ("LOT") and arrived at their destination later than scheduled due to delayed or cancelled flights. They filed the Complaint asserting individual claims as well as eleven claims as a class that seek relief for: delay or cancellation of international airfare in violation of Article 19 of the Convention for International Carriage by Air ("Montreal Convention") (Count One); breach of contract for violations of Articles 19 and 22 of the Montreal Convention (Count Two); breach of contract for violations of Article 6 of European Union Regulation 261 ("EU 261") (Counts Three, Seven, and Ten); breach of contract for violations of Article 9 of EU 261 (Counts Four and Eight); breach of contract for violations of Article 14 of EU 261 (Count Five); violations of Article 19 of the Montreal Convention (Count Six); breach of contract for international airfare (Count Nine); and breach of contract for violations of Articles 5, 7, 9, and 14 of EU 261 and Article 19 of the Montreal Convention (Count Eleven). (Dkt. No. 24.) LOT filed a motion to dismiss the claims related to violations of the Montreal Convention and EU 261 under Federal Rule of Civil Procedure 12(b)(6) for failure

1

to state a claim upon which relief can be granted. (Dkt. No. 28.) LOT also argues that the Court should not certify Plaintiffs as a putative class under Rule 23. For the reasons given below, the Court grants LOT's motion to dismiss Counts Three, Four, Five, Seven, Eight, Ten, Eleven, and any individual claims without prejudice to the extent they seek redress for breach of contract due to violations of EU 261. The Court denies LOT's motion to dismiss Counts One, Two, Six, Eleven, and individual claims brought under the Montreal Convention. The Court further rejects LOT's proposal to deny class certification and defers consideration of class certification until after the pleadings stage.

## BACKGROUND

LOT is an international airline that is licensed and domiciled in Poland, which is a member of the European Union. (Dkt. No. 24 at ¶¶7, 25, 27.) Plaintiffs purchased tickets for flights operated by LOT that contained the Conditions of Contract. *Id.* at ¶69.

Irina Dochak departed Chicago on June 13, 2014 on LOT flights from Chicago to Lvov, Ukraine with a layover in Warsaw, Poland. *Id.* at ¶96. On her return flight via the same route, Dochak's LOT flight from Lvov to Warsaw was cancelled causing her to miss her connecting flight from Warsaw to Chicago. *Id.* at ¶100. Dochak was put on a later flight and arrived in Chicago two days later than scheduled. *Id.* at ¶103.

Margarita Matusova traveled on September 19, 2013 on LOT flights from Chicago to Minsk, Belarus with a connection in Warsaw. *Id.* at ¶115. The flight from Minsk to Warsaw was cancelled and Matusova was put on a flight from Minsk to Frankfurt and then another from Frankfurt to Chicago. *Id.* at ¶120. She arrived in Chicago a day later than scheduled. *Id.* at ¶121.

Ludmila Konosova purchased airline tickets from LOT to fly from Chicago to St. Petersburg, Russia with a layover in Warsaw on October 4, 2013. *Id.* at ¶141. Her flight from Chicago to Warsaw was delayed causing her to miss her connecting flight to St. Petersburg. *Id.* at ¶145. Konosova arrived in St. Petersburg ten hours later than scheduled. *Id.* at ¶147.

Marina and Anastasia Sendun departed Lvov on August 15, 2013 on a LOT flight that was scheduled to stop in Warsaw and then arrive in Chicago. *Id.* at ¶158. Their LOT flight from Warsaw to Chicago was cancelled, forcing the Senduns to stay overnight in Warsaw at their own expense. *Id.* at ¶¶159-160. The Senduns arrived in Chicago 24 hours later than scheduled. *Id.* at ¶162.

Tatyana Mospan and her three children traveled via LOT airplanes on August 19, 2014 from Chicago to Lvov with a layover in Warsaw. *Id.* at ¶169. Their LOT flight from Warsaw to Chicago was delayed causing them to arrive in Chicago four hours later than scheduled. *Id.* at ¶174.

Volodumar Bukowski bought LOT tickets to fly from Chicago to Lvov with a layover in Warsaw on May 26, 2013. *Id.* at ¶184. His LOT flight from Chicago to Warsaw was cancelled, and as a result he missed his flight from Warsaw to Lvov and arrived in Lvov six days later than scheduled. *Id.* at ¶¶188, 191.

Natalia Duduch and her two children were scheduled to fly on LOT airlines from Chicago to Lvov with a layover in Warsaw on May 26, 2013. *Id.* at ¶201. Their LOT flight from Chicago to Warsaw was delayed and then cancelled. *Id.* at ¶204. Consequently, Duduch and her children arrived in Lvov later than scheduled.[1] *Id.* at ¶206.

Ihor and Liliya Prokipchuck bought tickets from LOT to travel from Chicago to Lvov with a connection in Warsaw on June 16, 2014. *Id.* at ¶216. Their LOT flight from Chicago to

---

[1] The Complaint states that they arrived "5 days hours late[.]" *Id.* at ¶206.

Warsaw was cancelled and they were moved to an Austrian Airlines flight from Chicago to Lvov with a connection in Vienna, Austria. *Id.* at ¶222. As a result, the Prokipchucks arrived in Lvov days later than scheduled. *Id.* at ¶225.

Stanislav and Natalia Belik were supposed to fly on December 28, 2014 from Chicago to Lvov with a layover in Warsaw on LOT airlines. *Id.* at ¶235. Their LOT flight from Chicago to Warsaw was cancelled and they subsequently arrived in Warsaw 14 hours later than scheduled. *Id.* at ¶240. The Beliks were forced to stay in Warsaw overnight and arrived in Lvov later than scheduled. *Id.* at ¶¶241, 242.

Olga Kalmenson purchased airline tickets from LOT to fly from Chicago to Gdansk, Poland with a connection in Warsaw on September 18, 2013. *Id.* at ¶251. Her LOT flight from Chicago to Warsaw was cancelled and Kalmenson was placed on a later LOT flight causing her to arrive in Chicago several hours later than scheduled. *Id.* at ¶257.

Vasili Kutsko was scheduled to fly via LOT from Minsk to Chicago on July 28, 2015 with a layover in Warsaw. *Id.* at ¶¶266, 268. Similarly, Alexandra and Vasili Kulick bought tickets to travel on July 28, 2015 on LOT flights from Kiev, Ukraine to Chicago with a connection in Warsaw. *Id.* at ¶281. The LOT flight from Warsaw to Chicago was cancelled causing Kutsko and the Kulicks to arrive in Chicago several hours later than scheduled. *Id.* at ¶¶269, 272, 288.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. To survive a 12(b)(6) motion, the complaint must provide enough factual information to state a claim for relief that is plausible on its face and "raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). A complaint is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the 12(b)(6) stage, all of the "factual allegations contained in the complaint" must be "accepted as true." *Twombly*, 550 U.S. at 572. Furthermore, well-pled facts are viewed in the light most favorable to the plaintiff. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). But "legal conclusions and conclusory allegations merely reciting the elements of a claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

## DISCUSSION

### I. Breach of Contract Claims for Violations of EU 261

#### A. The Conditions of Carriage Did Not Incorporate EU 261

LOT's first argument for dismissing Plaintiffs' claims for violations of EU 261 is that they are prohibited under *Volodarskiy v. Delta Airlines, Inc.*, 784 F.3d 349 (7th Cir. 2015). The Seventh Circuit in *Volodarskiy* held that EU 261 is not judicially enforceable outside the courts of the European Union member states; however, that case does not address whether a party can bring a claim for breach a contract alleging that the contract incorporated EU 261 into its provisions. *Id.* at 357. Considering that Plaintiffs assert breach of contract claims alleging that EU 261 was incorporated into the Conditions of Carriage and do not use EU 261 as the cause of action, the Court cannot dismiss these claims solely based on *Volodarskiy*.

Second, LOT contends that all claims seeking relief for breach of contract based on LOT's alleged violations of EU 261 should be dismissed because the Conditions of Carriage did not incorporate EU 261. LOT claims that Paragraph 10.2 of the Conditions of Carriage, which

the Complaint quotes and refers to EU 261, is insufficient evidence of intent to incorporate the entirety of EU 261 and rather was intended to provide Plaintiffs notice of their rights under EU 261 apart from the Conditions of Carriage. Plaintiffs, on the other hand, argue that the Complaint adequately pleads that the Conditions of Carriage incorporated EU 261 because Paragraph 10.2 demonstrates incorporation of EU 261. They further point to the availability of EU 261 on LOT's website as demonstrative of incorporation.

"Under Illinois law, a document is incorporated by reference into the parties' contract only if the parties intended its incorporation." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002). Such intent to incorporate must "be clear and specific." *Id.* "When determining under Illinois law whether something is incorporated into a contract, we limit our inquiry to the four corners of the contract." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664 (7th Cir. 2002) (quoting *Atl. Mut. Ins. Co. v. Metron Eng'g & Constr. Co.*, 83 F.3d 897, 901 (7th Cir. 1996)). And "mere reference to another contract or document is not sufficient to incorporate its terms into a contract." *Id.* at 666. The party seeking to enforce the terms of the allegedly incorporated document "must show…an intention to incorporate the document and make it a part of the contract." *188 LLC*, 300 F.3d at 736-37 (quoting *Arneson v. Bd. of Trs., McKendree Coll.*, 569 N.E.2d 252, 256 (Ill. App. Ct. 1991)).

The Complaint alleges that "Articles 6 and 7 of EU 261 is [sic] incorporated into the Tariff and Paragrah C 2.2. and Paragraph 10.2. of defendant's Condition of Carriage as published on its webpage[.]" (Dkt. No. 24 at ¶373.) It further claims that Article 16.3 incorporated EU 261 into the Conditions of Carriage. *Id.* at ¶437. The Complaint contains the following quote from Paragraph C 2.2:

> The provisions of General Conditions of Carriage are applicable in way not infringing those provisions of Convention or other statutory requirements that are

> unconditionally binding. If in consequence any provision of General Conditions of Carriage may not apply, the other provisions shall become applicable.

*Id.* at ¶341. As quoted by the Complaint, Article 16.3 of the Conditions of Carriage reads:

> In respect of carriage governed by the Convention, the carrier shall be liable for damage caused by delay of passenger's carriage unless it proves that it or its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures. Depending on which Convention shall be applied to a given carriage, the liability of carrier for each passenger shall be limited either to SDR 4 694 or 250,000 Francs Poincare (or their equivalents in other currency).

*Id.* at ¶351. It is reasonable to infer that the "Convention" in each of these provisions refers to the Montreal Convention. The Complaint also includes Paragraph 10.2:

> In the event of denied boarding and of cancellation or long delay of flights, passengers are entitled to rights provided for in the Regulation (EC) No 261/2004 of the European Parliament and of the Council, in accordance with the rules and to the extent set forth by this Regulation.

*Id.*[2] The Plaintiffs did not submit the full version of the Conditions of Carriage and these quotes are the only language from it provided in the Complaint,; thus, the Court must determine whether the parties intended to incorporate EU 261 based on these provisions alone. *See Rosenblum*, 299 F.3d at 666.

For starters, the Court does not accept as true Plaintiffs' allegation that the Conditions or Carriage incorporate Articles 6 and 7 of EU 261 because it is a legal conclusion and not a fact. *See McCauley*, 671 F.3d at 616. Next, neither Paragraph C 2.2 nor Article 16.3 mentions EU 261 and therefore do not incorporate it into the Conditions of Carriage. Construing the Plaintiffs' factual allegations in the light most favorable to them, Paragraph 10.2 does not plausibly constitute incorporation of Articles 6 and 7 of EU 261 into the Conditions of Carriage.

---

[2] In reference to this quote, the Complaint contains a footnote to the following hyperlink: http://www.lot.com/us/en/conditions-of-carriage. The associated webpage, which lists LOT's Conditions of Carriage, does not include the provision quoted by the Complaint as Paragraph 10.2 or mention EU 261.

Rather, it gives Plaintiffs notice of their rights under EU 261 as it states that "passengers are entitled to rights provided for in" EU 261. Paragraph 10.2 does not state that it incorporates any Article of EU 261 into the Conditions of Carriage and does not promise to uphold EU 261 as part of the Conditions of Carriage. In qualifying passengers' rights under EU 261 as "in accordance with the rules and to the extent set forth by this Regulation," Paragraph 10.2 does not plausibly incorporate EU 261 but instead explains that those rights are defined and subject to the rules of EU 261. In sum, the provisions of the Conditions of Carriage quoted in the Complaint, with no other evidence of incorporation, fall short of plausibly establishing the requisite "clear and specific" intent to incorporate Articles 6 and 7 of EU 261 into the Conditions of Carriage. *188 LLC*, 300 F.3d at 736; *see, e.g., Mandel Metals, Inc. v. Walker Group Holdings*, Case No. 14 CV 8493, 2015 WL 3962005 at *5 (N.D.Ill. June 26, 2015) (granting motion to dismiss breach of contract claims because of insufficient evidence that Terms and Conditions were incorporated into contract); *Lozano v. United Cont'l Holdings, Inc.*, No. 11 C 8258, 2012 WL 4094648 at *3-5 (N.D.Ill. Sep. 17, 2012) (holding EU 261 not incorporated into contract because language clearly designed to give notice of rights under EU 261); *Hartford Fire Ins. Co. v. Henry Bros. Constr. Mgmt. Servs., LLC*, No. 10-cv-4746, 2011 WL 3563138 at *6 (N.D.Ill. Aug. 10, 2011) (finding document not incorporated into contract because only referenced twice in contract and language of incorporation not clear and specific). The Court accordingly grants LOT's motion to dismiss Counts Three, Four, Five, Six, Seven, Eight, Ten, Eleven, and any individual claims for relief without prejudice to the extent that they seek redress for breach of contract under EU 261. (Dkt. No. 28.)

### B. Plaintiffs Are Not Required to Exhaust Remedies

According to LOT, in the alternative the Court should decline to exercise jurisdiction because of Plaintiffs' failure to exhaust the remedies provided by European courts under EU 261.[3] LOT asserts that Plaintiffs should have to exhaust remedies available in Europe due to the comprehensive legal scheme available for EU 261 violations as established by the European Union, European courts' exclusive jurisdiction over such claims, and the novelty and uniqueness of EU 261. In response, Plaintiffs point to the fact that the claims are for breach of contract and not styled as violations of EU 261.

The Seventh Circuit has recognized that requiring exhaustion of available remedies is "a basic principle of international law." *Enahoro v. Abubakar*, 408 F.3d 877, 886 (7th Cir. 2005). LOT's exhaustion argument presents two separate questions: first, whether the Conditions of Carriage impose an exhaustion requirement; and second, whether international law requires exhaustion of domestic remedies before Plaintiffs can establish a violation of EU 261. *See Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 678 (7th Cir. 2012). Regarding the first inquiry, there is no evidence that the Conditions of Carriage—as alleged in the Complaint—require exhaustion of remedies available in European courts. Furthermore, even if Plaintiffs asserted claims under EU 261 instead of breach of contract claims, the regulation does not explicitly require exhaustion of remedies. *See, e.g., Giannopoulos v. Iberia Lineas Aereas de España, S.A.*, No. 11 C 775, 2011 WL 3166159 at *6 (N.D.Ill. July 27, 2016) (finding EU 261 does not mandate exhaustion of remedies). Article 19 of EU 261 merely states that passengers "may

---

[3] LOT states that the Court should decline to exercise jurisdiction over the entire case because of the need to exhaust under EU 261 first. But LOT's argument is based entirely on the availability of adjudicating the claims for breach of contract with respect to EU 261 in European courts and does not mention the non-EU 261 based claims asserted by Plaintiffs. As a result, the Court addresses LOT's argument in connection with the EU 261 breach of contract claims.

complain" to designated judicial bodies "about an alleged infringement of this Regulation," but does not mandate exhaustion. *See id.*

Second, in terms of whether Plaintiffs must exhaust under international law, the Seventh Circuit held that the Court may require exhaustion domestic remedies before the American judiciary gets involved even if the statute does not explicitly require exhaustion because "[s]o long as plaintiffs might get a fair shake in a domestic forum, international law expects plaintiffs at least to attempt to seek a remedy [in the domestic forum] first." *See Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 858 (7th Cir. 2015). In *Fischer*, the plaintiffs were Holocaust survivors and their heirs who asserted claims against the Hungarian national bank and railway as well as private banks for expropriation of property of Hungarian Jews during the Holocaust. *Id.* at 852. The Court concluded that the Foreign Sovereign Immunities Act ("FSIA") implied an exhaustion requirement for taking of property in violation of international law because "comity at the heart of international law required plaintiffs either to exhaust domestic remedies in Hungary or to show a powerful reason to excuse the requirement." *Id.* at 858. It noted that allowing the plaintiffs to brings their claims directly to American courts without exhausting domestic remedies "would be quite anomalous" to FSIA's provision granting immunity to foreign sovereigns. *Id.* at 859.

International law principles do not require Plaintiffs to exhaust their remedies in European courts under EU 261 before bringing their claims to American courts. The principle of exhaustion in international law has been invoked primarily in situations like *Fischer* where human rights violations are at issue. *See id.*; *Flomo v. Firestone Nat'l Rubber Co., LLC*, 643 F.3d 1013, 1025 (7th Cir. 2011) ("[A] U.S. court might, as a matter of international comity, stay an Alien Tort suit that had been filed in the U.S. court, in order to give the courts of the nation in

10

which the violation had occurred a chance to remedy it, provided that the nation seemed willing and able to do that."); *Enaharo*, 408 F.3d at 886 (discussing the Torture Victim Protection Act's requirement of exhausting domestic remedies). In contrast, Plaintiffs' breach of contract claims brought in reference to EU 261 do not fit within the realm of when requiring domestic exhaustion is appropriate. The Court thus rejects LOT's argument that the Court decline jurisdiction over this case because Plaintiffs have not exhausted remedies under EU 261 in European courts. *See, e.g., Giannopoulos*, 2011 WL 3166159 at *6 (rejecting argument that plaintiffs needed to exhaust breach of contract claims based on violations of EU 261).

C. **Doctrine of Primary Jurisdiction Does Not Apply**

LOT's second jurisdictional argument claims that the Court should stay or dismiss the claims related to EU 261 under the theory of primary jurisdiction because European courts are the appropriate forum for these claims. Plaintiffs respond by reiterating that their claims are for contract liability and not brought pursuant to EU 261.

The doctrine of primary jurisdiction "applies only when, in a suit involving a regulated firm but not brought under the regulatory statute itself, an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve, although the agency's resolution of it will usually be subject to judicial review." *Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001). In this situation, the Court must stay the case and refer the issue to the agency; the Court does not dismiss it. *See id.*; *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004) ("the doctrine of primary jurisdiction is implemented by abstention—which means by staying rather than dismissing the litigation"). The issue of whether LOT breached the Conditions of Carriage is not within the exclusive jurisdiction of the European courts, and thus the doctrine of primary jurisdiction is inapplicable. *See, e.g., Rolls-Royce PLC v. Luxury Motors, Inc.*, No. 03 C 5953,

2004 WL 1375540 *2 (N.D.Ill. June 17, 2004) (refusing to stay case under primary jurisdiction doctrine because agency did not have exclusive jurisdiction over Illinois Motor Vehicle Franchise Act). Moreover LOT has failed to demonstrate why European courts possess expertise in EU 261 that this Court cannot adequately grasp with respect to Plaintiffs' claims which would warrant deferring to a European court. *See Arsberry*, 244 F.3d at 563; *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991) (acknowledging courts should consider the "special competence of an administrative body" in determining whether to stay a case based on primary jurisdiction doctrine). Furthermore, there is no evidence of a pending adjudication of Plaintiffs' complaints under EU 261 in any European court that would warrant the Court staying this case in order to allow for its resolution. *See, e.g., Natural Res. Def. Council v. Metro. Water Reclamation Dist. of Greater Chi.*, No. 11 C 02937, 2016 WL 1588510 at *4 (N.D.Ill. Apr. 20, 2016) (holding primary jurisdiction doctrine does not apply because defendant did "not identify with precision any relevant proceedings to which this Court should defer for the resolution of the question presented."). As a result, the Court declines to stay the case based on the doctrine of primary jurisdiction.

### D. EU 261 Would Apply If Incorporated into Conditions of Carriage

LOT's final argument for dismissal of the EU 261-related counts asserts that EU 261 does apply to these claims because all Plaintiffs traveled roundtrip from the United States and—except for Kalmenson—had a destination outside the EU. Because typically the law of the place of departure and not law of an interim location governs aviation cases, LOT contends that EU 261 cannot apply. Plaintiffs argue that EU 261 governs because they had connecting flights in EU countries; namely, Poland.

As an initial matter, EU 261 is not incorporated into the Conditions of Carriage as explained above, and thus, it does not matter whether EU 261 applies to Plaintiffs' allegations. But if the Conditions of Carriage incorporated EU 261 into its provisions, EU 261 would be applicable to Plaintiffs' claims. Article 3 of EU 261 states that "[t]his Regulation shall apply…to passengers departing from an airport located in a third country to an airport situated in the territory of a Member State to which the Treaty applies, unless they received benefits or compensation and were given assistance in that third country, if the operating air carrier of the flight concerned is a Community carrier." (Dkt. No. 36 at Ex. B.) The regulation defines a "community carrier" as "an air carrier with a valid operating licence granted by a Member State in accordance with the provisions of Council Regulation (EEC) No 2407/92 of 23 July 1992 on licensing of air carriers[.]" *Id.* The Complaint alleges that LOT is an air carrier licensed by the European Union. (Dkt. No. 24 at ¶25.) As such, EU 261 considers LOT a "community carrier." All of the Plaintiffs departed from a country outside the EU but had a connection in Poland, which is a member of the EU. The remaining question, therefore, is whether EU 261 does not apply because Plaintiffs "received benefits or compensations and were given assistance in that third country[.]" The Complaint does not allege that the Plaintiffs received benefits or compensation and were given assistance in their respective countries of departure all of which were outside the EU. In conclusion, EU 261 would apply to the Plaintiffs' claims if the Conditions of Carriage incorporated EU 261; however, because the Conditions of Carriage did not incorporate EU 261 as described previously, the Court grants LOT's motion to dismiss Counts Three, Four, Five, Seven, Eight, Ten, Eleven, and any individual claims without prejudice to the extent that they seek redress for breach of contract under EU 261.

## II. Montreal Convention Claims

### A. The Complaint Pleads Recoverable Damages under the Montreal Convention

LOT moves for dismissal of all claims alleging violations of the Montreal Convention on the basis that Plaintiffs have failed to allege damages that are recoverable under the Montreal Convention. LOT argues that the Montreal Convention does not permit Plaintiffs to recover damages for stress, mental anguish, or subjective injuries endured as a result of delay. In response, Plaintiffs assert that the Complaint states a claim for violations of the Montreal Convention because any type of compensable damage caused by flight delay is recoverable.

Count One seeks relief under Article 19 of the Montreal Convention for "actual, out-of-pocket, Per Diem and general damages" and "general and special damages" for delayed or cancelled airfare. (Dkt. No. 24 at ¶¶328, 343.) Count Two seeks to recover "compensable actual, general, special, incidental and consequential damages" under Article 19 for failure to pay compensation for delayed flights.[4] *Id.* at ¶357. Also for alleged violations of Article 19, Count Six requests damages for "loss of her wages due to being one day late for her work, as well as suffered frustration of her European journey for pre-planed [sic] vacation; as well as were [sic] subjected to physical discomfort, anxiety, loss of time, loss of use of her monies, and was subjected to various actual, general, special, incidental and consequential damages" in addition to "travel cancellation expenses, loss of benefit of her travel bargain, inconvenience, physical discomfort, pain, exhaustion, loss of time, frustration of purpose to travel, anxiety, frustration, uncertainty[.]" *Id.* at ¶¶422, 428. Lastly, Count Eleven seeks "actual, general, special, incidental

---

[4] Count Two alleges a violation of Article 22 of the Montreal Convention, however, Article 22 only establishes a limit on the amount a passenger can recover under the Montreal Convention and does not serve as a cause of action for a delay. *See* 1999 WL 33292734 at art. 22.

and consequential" damages under Article 19 for the delay and cancellation of flights.[5] *Id.* at ¶472.

The Montreal Convention was designed to reform the Warsaw Convention which created a scheme for limiting an air carrier's liability. *Somo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 779-781 (7th Cir. 2008). In 2003, the Montreal Convention came into force and replaced the Warsaw Convention in order to "harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists." *Id.* at 780 (quoting *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004)). All of Plaintiffs' Montreal Convention claims are brought under Article 19 of the Montreal Convention which states that "carriers shall be liable for delay of passengers, baggage, or cargo" and allows for the collection of "damages occasioned by delay." Convention for International Carriage by Air, S. Treaty Doc. No. 106-45, 1999 WL 33292734, May 28, 1999. Due to the similarity between Article 19 and the Warsaw Convention's companion provision, Courts often refer to the Warsaw Convention in interpreting Article 19. *See, e.g., Giannopoulos*, 2011 WL 3166159 at *4; *Narkiewicz-Laine v. Scandinavian Airlines Sys.*, 587 F.Supp.2d 888, 890 (N.D.Ill. 2008). Additionally, Article 29 of the Montreal Convention places limits on claims for damages mandating that "[a]s under the Warsaw Convention and its related instruments, punitive, exemplary, or any other non-compensatory damages are not recoverable." 1999 WL 33292734 at art. 29.

Although the Seventh Circuit has not considered the question, Courts in other circuits have held that Article 19 permits the payment of economic damages from a delayed flight but disallows compensation for emotional loss, physical injury, or inconvenience. *Campbell v. Air*

---

[5] Count Eleven also seeks damages under EU 261 but as explained previously the Court grants LOT's motion to dismiss this claim to the extent it seeks relief for violations of EU 261.

*Jamaica, Ltd.*, 760 F.3d 1165, 1170-71 (11th Cir. 2014) (finding complaint adequately pled damages obtainable under Article 19 because it alleged a $150 change fee for a replacement flight that is an economic injury); *Lee v. Am. Airlines Inc.*, 355 F.3d 386, 387 (5th Cir. 2004) (finding plaintiff's "so-called inconvenience damages are not easily quantifiable and do not result in real economic loss" compensable under Article 19); *see, e.g., Vumbaca v. Terminal One Group Ass'n L.P.*, 859 F.Supp.2d 343, 368 (E.D.N.Y. 2012) ("Mere inconvenience does not support a claim under Article 19."); *Mizyed v. Delta Airlines, Inc.*, Civil Action No. 12-382, 2012 WL 1672810 at *5 (E.D. La. 2012) ("mental injury damages are not recoverable under Article 19"). Viewing the Complaint in the light most favorable to the Plaintiffs, it is plausible that they seek economic damages and not only damages for inconvenience or psychological or physical injuries. Amongst other things, in each of Counts One, Two, Six, and Eleven Plaintiffs seek relief for travel cancellation expenses such as the cost of food, a hotel room, and loss of wages, all of which constitute economic compensatory damages that can be recovered under Article 29. *See* 1999 WL 33292734 at art. 29. Considering that Plaintiffs request damages that Article 29 allows for, the Court denies LOT's motion to dismiss Counts One, Two, Six, and Eleven and individual claims for redress under the Montreal Convention.

### B. Article 19 Applies to Pre-Departure Cancellations

In one paragraph, LOT contends that the claims for violations of the Montreal Convention brought by Plaintiffs Dochak, Konosova, Bukowsky, Dudych, Prokipchuck, and Belik should be dismissed because the Montreal Convention does not apply to pre-departure cancellations. LOT cites to *Wolgel v. Mexicana Airlines*, 821 F.2d 442 (7th Cir 1987) in support of this argument which stands for the proposition that the Warsaw Convention does not enable recovery for "bumping," meaning non-performance of a purchase agreement with an airline due

16

to overbooking or overselling of a flight. *Id.* at 444-45. The plaintiffs in *Wolgel* were "not attempting to recover for injuries caused by their delay" but instead on the reality that "they never left the airport." *Id.* at 445. LOT admits that "none of the plaintiffs' claims constitute 'bumping'" and baldly asserts that nonetheless their Montreal Convention claims are barred because Dochak, Konosova, Bukowsky, Dudych, Prokipchuck, and Belik were delayed before they left their respective points of departure. First, *Wolgel* is inapposite because that case held that Article 19 of the Warsaw Convention—which mirrors Article 19 of the Montreal Convention—does not extend to claims of discriminatory bumping, whereas this case pertains to delays, not bumping. *Id.* Second, nothing in Article 19 of the Montreal Convention suggests that it only applies to delays that occur after a plaintiff's initial flight takes off and LOT failed to identify any support for this argument. *See* 1999 WL 33292734 at art. 19. The Court therefore denies LOT's motion to dismiss the Montreal Convention claims brought by Plaintiffs Dochak, Konosova, Bukowsky, Dudych, Prokipchuck, and Belik.

## III. Challenges to Class Certification are Premature

In its 12(b)(6) motion, LOT objects to the class certification for claims of violations of the Montreal Convention because Plaintiffs' claims contain insufficient common questions of law and fact. LOT points out that determination of liability under Article 19 of the Montreal Convention depends on the individual facts of each Plaintiffs' delay, which LOT claims causes Plaintiffs to fail the typicality requirement for a class action. Similarly, LOT argues that the Court should deny class certification for the EU 261-based claims because of the unique facts surrounding each Plaintiffs' delay. Plaintiffs respond that LOT's opposition to class certification should be raised in a Rule 56 motion for summary judgment and cannot be addressed at the pleading stage.

Federal Rule of Civil Procedure 23 governs class action lawsuits. LOT essentially argues that under Rule 23(b)(3), the Complaint fails to allege that there are "questions of law or fact common to class members[.]" Rule 23(c)(1) mandates class certification be resolved "[a]t an early practicable time after a person sues or is sued as a class representative." And generally, the Court addresses a 12(b)(6) motion before certifying a putative class under Rule 23. *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 n.4 (7th Cir. 2012); *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 910 n.3 (7th Cir. 2013). But whether a plaintiff has satisfied the requirements under Rule 23 for a class action is not an appropriate inquiry at the motion to dismiss stage. LOT should instead move under Rule 23(c)(1)(A) to argue that class action is unwarranted as it requires determination of class certification as an early practicable time. *See, e.g., Mednick v. Precor, Inc.*, Case No. 14 C 3624 Consolidated with Case No. 14 C 4231, 2014 WL 6474915 at *7 (N.D.Ill. Nov. 13, 2014) (deferring consideration of class certification arguments to certification stage instead of pleadings stage); *Dominguez v. Micro Ctr. Sales Corp.*, No. 11 C 8203, 2012 WL 1719793 at *2 (N.D.Ill. May 15, 2012) ("As a general rule, whether a suit can be maintained as a class or collective action is determined not on a Rule 12(b)(6) motion, but on a motion to certify a class action under Rule 23 or a motion to certify a collective action under 29 U.S.C. § 216(b)."); *Howard v. Renal Life Link, Inc.*, No. 10 C 3225, 2010 WL 4483323 at *2 (N.D.Ill. Nov. 1, 2010) (collection of cases; finding 12(b)(6) motion for failure to define putative class premature and "best left for class certification stage"). Accordingly, the Court declines to consider LOT's arguments with respect to class certification because they are improper for the motion to dismiss phase.

## CONCLUSION

For the reasons stated above, the Court grants LOT's motion to dismiss Counts Three, Four, Five, Seven, Eight, Ten, Eleven, and any individual claims without prejudice to the extent those claims seek redress for breach of contract due to violations of EU 261. The Court denies LOT's motion to dismiss Counts One, Two, Six, Eleven, and individual claims with respect to their claims brought under the Montreal Convention. Finally, the Court rejects LOT's proposal to deny class certification and defers consideration of class certification until after the pleadings stage.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 5/27/2016