**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IRYNA DOCHAK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 15 C 4344 |
| | ) | |
| POLSKIE LINIE LOTNICZE LOT S.A., | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are a group of eight[1] individuals, representing themselves, six of their minor children, and a putative class of similarly situated individuals, who suffered economic losses after experiencing flight delays or cancellations on flights operated by Defendant Polskie Linie Lotnicze LOT S.A. ("LOT") airlines. On May 27, 2016, the Court dismissed Counts Three, Four, Five, Seven, Eight, Ten, Eleven, and all individual claims to the extent they sought redress for breach of contract due to violations of Regulation No. 261/2004 of the European Parliament and European Council. (*See* Dkt. 54.) Plaintiffs' only remaining claims (Counts One, Two, Six, and Eleven) are those that seek economic damages[2] for delay or cancellation of international air travel in violation of Articles 19 and 22 of the Convention for International Carriage by Air ("Montreal Convention").[3] (Dkt. 24.)

---

[1] On November 28, 2016, this Court dismissed the claims of seven of the eight plaintiffs who failed to appear for their court-ordered depositions.

[2] The Court also limited potential damages under the Montreal Convention to the extent that Plaintiffs sought "economic damages and not [] damages for inconvenience or psychological or physical injuries." (*Id.*)

[3] The Court denied LOT's motion to dismiss Counts One, Two, Six, Eleven, and individual claims brought under the Montreal Convention.

Under current consideration are three motions filed by LOT: (1) Defendant's Motion for Judgment on the Pleadings regarding the availability of attorney fees under the Montreal Convention (Dkt.118); (2) a Motion to Dismiss Plaintiffs' Class Certification Claims (Dkt. 139); and (3) Defendant's Motion for Partial Summary Judgment to Dismiss All or Part of Plaintiffs' Individual Claims (Dkt. 129). For the reasons stated herein, LOT's Motion for Judgment on the Pleadings and its Motion to Dismiss Plaintiffs' Class Certification Claims are granted. LOT's Motion for Partial Summary Judgment is granted in part and denied in part.

## I.      Motion for Judgment on the Pleadings (Dkt. 118)

Plaintiffs' allege that they are "entitled to reasonable attorneys [sic] pursuant to Article 22(6) of the Montreal Convention." (*See, e.g.*, Dkt. ¶¶ 347, 431.) Pursuant to Rule 12(c), LOT seeks to dismiss Plaintiffs' claims for attorneys' fees, arguing that the Montreal Convention only permits attorneys' fees when domestic law provides for them and there is no such statute or rule that allows for the recovery of fees under these circumstances.[4]

## LEGAL STANDARD

Motions for Judgment on the Pleadings brought pursuant to Rule 12(c) are reviewed under the same standard that applies to motions to dismiss under 12(b)(6). Fed.R.Civ.P. 12(c); *Buchanan—Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). To survive a 12(b)(6) motion, the claim must provide enough factual information to state a claim for relief that is plausible on its face and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the 12(b)(6) stage, all of the "factual allegations contained in the complaint" must be "accepted as true." *Twombly*, 550

U.S. at 572. Furthermore, well-pled facts are viewed in the light most favorable to the plaintiff. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). But "legal conclusions and conclusory allegations merely reciting the elements of a claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

### DISCUSSION

Prior to the implementation of the Montreal Convention, a complex system of conventions, treaties, and domestic law governed international carrier liability. *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 780 (7th Cir. 2008). The Montreal Convention was the product of a United Nations effort to unify the disjointed and complex system of airline liability and recognized "the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution." Montreal Convention, pmbl. The Montreal Convention which came into force in 2003, has been signed by more than 50 countries that each have their own distinct legal regimes. *Sompo Japan Ins., Inc.*, 522 F.3d at 781.

Article 22(6) of the Montreal Convention, which governs the availability of attorneys' fees, recognizes that ratifying countries, whose domestic courts adjudicate claims brought pursuant to the Montreal Convention, have differing laws, as the Convention provides that "this Article shall not prevent the court from awarding, *in accordance with its own law*, in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff, including interest." Montreal Convention art. xxii(6). Article 22(6) does nothing more than authorize courts to apply their own domestic law regarding the availability of fees when a party requests costs and fees.

As a result, we turn to domestic law to see if attorneys' fees are available to Plaintiffs under the circumstances. "'Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253 (2010)).

Plaintiffs have failed to respond to LOT's motion and thus have not articulated what statute or rule contradicts the American Rule and authorizes the payment of their attorney's fees, nor did they identify any such statute in their complaint. This, in itself, would be a sufficient ground for the denial of the request for fees fees since undeveloped or nonresponsive pleadings constitute a waiver on the part of the negligent party who chose not to respond. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Regardless, the Court has not otherwise identified any such statute or rule that entitles Plaintiffs to their attorney's fees. Additionally, several courts, including another district court within this district, have rejected similar requests for fees, repeatedly finding that parties are not entitled to attorneys' fees under the Montreal Convention and that no other statute or rule provides for them. *See Muoneke v. Compagnie Nationale Air France*, 330 F. App'x 457, 462 (5th Cir. 2009) (finding that Montreal Convention does not "provide an independent basis" for awarding attorneys' fees and that the plaintiff "has identified no federal law that permits an award of attorneys' fees in this case, and the general rule that we employ requires each party to bear his own attorneys' fees in the absence of a statute authorizing a fee award"); *see also Bytska v. Swiss Int'l Air Line*, Ltd., No. 15-CV-483, 2016 WL 6948375, at *3 (N.D. Ill. Nov. 28, 2016) (refusing to authorize the payment of attorneys' fees for claim brought under the Montreal

Convention under Rule 54). For these reasons, LOT's motion for judgment on the pleading as to the unavailability of attorneys' fees under the Montreal Convention is granted.

## II.     Motion to Dismiss Class Certification Claims (Dkt. 139.)

On September 12, 2015, Plaintiffs filed a "placeholder" Motion for Class Certification to preserve their class claims. (*See* Dkt. 14.) Plaintiffs withdrew their motion without prejudice on September 25, 2015, after LOT stipulated that the motion was timely and that it would not attempt to moot Plaintiffs' claims by proffering a Rule 68 offer of judgment. (Dkt. 18.) As part of its motion to dismiss filed in December 2015, LOT moved to strike Plaintiffs' class claims. The Court denied this attempt to strike the class claim in its May 27, 2016 Order, finding that it was premature to address class issues at that juncture but noted that following discovery, LOT could "move under Rule 23(c)(1)(A) . . . [for an order] that class action is unwarranted." (Dkt. 54 at 18.) In the intervening 18 months, Plaintiffs failed to move for class certification. Following the conclusion of discovery, LOT affirmatively moved to deny Plaintiffs' class certification claims pursuant to Rule 23.

## LEGAL STANDARD

Rule 23 governs all aspects of litigation specific to class actions, including the timing of class certification, requiring that courts determine whether to certify an action as a class action, "[a]t an early practicable time after a person sues or is sued." Fed. R. Civ. P. 23(c)(1)(A). "A court may certify a plaintiff class when the named plaintiff demonstrates that the proposed class meets the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one of the branches of Rule 23(b)." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 858–59 (7th Cir. 2017). "A party seeking class certification must

affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).

Consistent with Rule 23, "a court may deny class certification even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011); *Cook Cty. Coll. Teachers Union, Local 1600, Am. Fed'n of Teachers, AFL-CIO v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972) ("One opposing a class action may move for an order determining that the action may not be maintained as a class suit."). When a defendant moves to deny class certification at the close of discovery, as LOT has done here, Plaintiffs still bear the burden of demonstrating that class certification is appropriate.[5] *See, e.g., Lee v. Children's Place Retail Stores, Inc.*, No. 14 C 3258, 2014 WL 5100608, at *2 (N.D. Ill. Oct. 8, 2014) ("Even when the defendant initiates the court's review of class allegations, the burden remains on the plaintiff to establish that the suit may be maintained as a class action."); *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010) ("Even though the issue of class certification thus comes before the Court on Defendants' motion, the burden remains on Plaintiffs to prove that each of the required elements for class certification under Rule 23 has been satisfied."); *Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 640 (S.D. Cal. 2007), *aff'd*, 571 F.3d 935 (9th Cir. 2009) (noting that "[t]he party seeking certification bears the burden of showing  that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) have been met" when evaluating motion brought by defendant to deny class certification near the close of discovery).  In circumstances where the defendant moves to strike class allegations prior to discovery as LOT initially did here, courts often impose a higher burden on defendants.  *See Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991) ("defendants have the burden

of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove."); *see also Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4698665, at *2 (N.D. Ill. Sept. 8, 2016) ("Unlike with a motion for class certification, on a motion to strike class allegations, the defendant, as the movant, bears the burden of persuasion.") District courts have "broad discretion to determine whether certification of a class–action lawsuit is appropriate." *Chavez v. Illinois State Police*, 251 F.3d 612, 629 (7th Cir. 2001) (quoting *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997)).

## DISCUSSION

LOT's motion attacks almost every requirement of Rule 23 necessary to certify a class, arguing that the proposed class lacks commonality, typicality, ascertainability, adequate representation, and that Rule 23(b)(3) does not justify certification because individual damages determinations will predominate common issues and Rule 23(b)(1) is inapplicable to the remaining claims.[6] (Dkt. 140.) Plaintiffs have failed to substantively respond to LOT's motion, instead arguing that LOT improperly brought its motion pursuant to Rule 12(b)(6). (Dkt. 149.) Plaintiffs spend the majority of their response brief arguing that a motion to dismiss is not the proper vehicle to dispose of class certification claims and assert that "nowhere in the body of its motion and in accompanied memorandum of law and facts the defendant specifically indicates that this "motion to dismiss" is brought pursuant to and in accordance with Rule 23(c)(1)(A) of Fed.R. Civ. Procedure." (*Id.* at 6.)

---

[6] LOT does not argue that the proposed class lacks sufficient numerosity. Plaintiffs have asserted that there are at least 100 members in the putative class. "While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017).

Plaintiffs are mistaken. Although LOT's motion is titled a "Motion to Dismiss Plaintiffs' Class Certification Claims," the motion is unequivocal that it is brought pursuant to Rule 23. (*See* Dkt. 139 at 1) (LOT "moves pursuant to Federal Rule of Civil Procedure 23 for an order dismissing Plaintiffs' class certification claims"); (Dkt. 140 at 1) ("the evidence shows that Plaintiffs' claims cannot be certified under Rule 23 of the Federal Rules of Civil Procedure."). LOT's motion and supporting memorandum do not invoke Rule 12 in any substantive way. Plaintiffs bear the burden of demonstrating that class certification is appropriate. Here, the Court specifically denied the initial motion challenging the class action and permitted discovery on the matter to proceed at the same time as the fact discovery in this case. As such, Plaintiffs had ample opportunity to perform class discovery, were directed to do that, and now have wholly failed to address the merits of LOT's motion. This has been a pattern of behavior in the case. Plaintiffs' counsel often seeks extensions and when given time to respond, fails to address the issues at hand. More than once, the Court has had to intervene to keep Plaintiffs' counsel at task. Here, he was given the opportunity and the time to respond to the motion and he has failed to do so in any way except to divert the Court to another issue, not the one at hand. As a result, LOT's motion is granted.

Regardless, even if the Court were to analyze the merits of class certification without any substantive input from Plaintiffs, as it has done, certification is still not appropriate. Plaintiffs have not adequately defined the class, although for purposes of this analysis, the Court will look to their class definition in their withdrawn placeholder class certification motion. There, Plaintiffs proposed a class of thousands U.S. residents who suffered multi-hour delays on LOT flights on or after January 1, 2013, resulting from an issue other than "extraordinary circumstances" on flights between countries that ratified the Montreal Convention. (Dkt. 14 at 3-

4.)   As discussed extensively in the Court's analysis of LOT's motion for partial summary judgment below, each putative plaintiff's claim centers on two individualized and unique inquiries: (1) the nature of the affected plaintiff's delay and whether LOT took reasonable measures to avoid it; and (2) whether LOT took reasonable steps to mitigate economic loss as to each delayed passenger.  *See Rambarran v. Dynamic Airways, LLC*, No.14-cv-10138, 2015 WL 4523222, at *5 (S.D.N.Y. July 27, 2015) ("Measures taken to rebook or otherwise accommodate passengers experiencing delay—as well as measures taken to prevent the original delay-causing events—are relevant to determining liability under Article 19."); *see, e.g., Giannopoulos v. Iberia Lineas Aereas de Espana, S.A., Operadora, Sociedad Unipersonal*, No. 11 C 775, 2012 WL 5499426, at *4-5 (N.D. Ill. Nov. 9, 2012). As Plaintiffs concede, the putative class would comprise thousands of passengers from hundreds of different flights, where each flight was canceled for a different reason and each passenger was potentially treated differently by LOT as a result of the delay.  Due to these individualized issues, it is far from clear that Plaintiffs could satisfy the commonality requirement of Rule 23, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Commonality "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.  "Where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff as it did [here], no common answers are likely to be found." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).[7]  The issues of liability unique to each putative plaintiff could also preclude a finding of typicality. Typicality is satisfied when

the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotation marks and citation omitted). Here, except for potentially a handful of exceptions, the named plaintiff's claim did not arise out of the same events or practice as there are hundreds, if not thousands of flights at issue, each delayed or canceled for different reasons. At least one court to examine the issue has denied class certification on this ground. *See Rambarran,* 2015 WL 4523222, at *5.

Similar issues also preclude a finding of predominance under Rule 23(b)(3). The Court notes that Rule 23(b)(1), which permits certification when the requirements of Rule 23(a) are satisfied and prosecuting separate actions by individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" is inapplicable here because the Montreal Convention requires individualized inquiries that will necessarily result in variable determinations of liability and damages. Fed. R. Civ. P. 23. Therefore, for a class to be certified, plaintiffs must satisfy one of the elements of Rule 23(b), in addition to satisfying all of the requirements of Rule 23(a). Rule 23(b)(3) permits certification of a class when the court finds that the "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Predominance includes a similar but far more demanding inquiry than commonality. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). Denial of certification due to failure to satisfy the predominance requirement is appropriate when there are "particularized facts of each plaintiffs claim" as there are here. *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889 (7th Cir. 2011). In fact,

courts analyzing similar claims under the Montreal Convention have routinely declined to certify classes due to the individualized nature of claims under the Montreal Convention, especially when the putative class consists of individuals on different flights. *See e.g. Shabotinsky v. Deutsche Lufthansa AG*, No. 16 C 4865, 2017 WL 1134475, at *7 (N.D. Ill. Mar. 27, 2017) (striking class claims for class of passengers on numerous different Lufthansa flights because "[s]uch a class would encompass disparate claims based on delays arising in connection with hundreds of flights."); *Pumputiena v. Deutsche Lufthansa, AG*, No. 16 C 4868, 2017 WL 66823, at *10 (N.D. Ill. Jan. 6, 2017) (striking class claims of thousands of putative class members who sought damages under Montreal Convention due to flight delays because common questions could not predominate over individual issues); *Rambarran*, 2015 WL 4523222, at *5 (denying class certification for Montreal Convention claims by passengers affected by flight delays with respect to typicality and predominance requirements of Rule 23 because the case presented a "host of passenger-specific, fact-driven questions").

Rule 23(a) also requires that the representative parties will fairly and adequately protect the interests of the class. This requirement includes assessing "the class lawyer's competence before certifying a suit to proceed as a class action." *Greisz v. Household Bank (Ill.), N.A.*, 176 F.3d 1012, 1013 (7th Cir. 1999). Plaintiffs' counsel has made no showing that he would adequately protect the interests of the putative class and the Court has independent concerns regarding Plaintiffs' counsel's ability to adequately and fairly represent the putative class. When determining whether to certify a class, courts look to the "quality of work, briefing skills, diligence, care, and attention to detail," of potential class counsel – attributes that Plaintiffs' counsel has failed to exemplify in his management of this litigation. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 593 (7th Cir. 2011), as modified (Sept. 22, 2011). More than once,

the Court has voiced its concern with Plaintiffs' counsel's diligence in prosecuting this matter and his inability to meet court imposed deadlines. To name just a few of those concerns, Plaintiff's counsel has failed to meaningfully respond to substantive motions, failed to depose LOT's corporate representative, and his failure to produce many of the individual plaintiffs for their depositions resulted in their claims being dismissed with prejudice. These concerns say nothing about counsel's disciplinary history, which as detailed in LOT's motion, is troubling and at odds with the high standards required to be class counsel. For the foregoing reasons, LOT's Motion to Dismiss Class Certification Claims is granted.

## III.     Motion for Partial Summary Judgment

LOT has moved for partial summary judgment on two fronts. First, LOT seeks to limit the potential damages available to Plaintiffs to the amount of potential economic losses they testified to at their depositions. Second, LOT seeks summary judgment as to the claims of Plaintiffs Matusova and Sendoun, because LOT argues that it took "all measures that could reasonably be required to avoid the damage," as delineated by the Montreal Convention to be exempted from liability. For the foregoing reasons, LOT's Motion for Partial Summary Judgment is granted in part and denied in part.

## **LEGAL STANDARD**

Summary judgment is appropriate where the admissible evidence shows that no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A 'material fact' is one identified by the substantive law as affecting the outcome of the suit." *Bunn v. Khoury Enters., Inc.,* 753 F.3d 676, 681 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A 'genuine issue' exists with

respect to any such material fact, and summary judgment is therefore inappropriate, when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 681–82 (citing *Anderson,* 477 U.S. at 248). On the other hand, "where the factual record taken as a whole could *not* lead a rational trier of fact to find for the nonmoving party, there is nothing for a jury to do." *Bunn,* 753 F.3d at 682 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (emphasis in original)). In determining whether a genuine issue of material fact exists, the Court construes the evidence and all inferences that reasonably can be drawn in the light most favorable to the nonmoving party. *See id.* at 682 (citing *Anderson,* 477 U.S. at 255); *see also Kvapil v. Chippewa County, Wis.,* 752 F.3d 708, 712 (7th Cir. 2014).

## **BACKGROUND**

Local Rule 56.1 requires that the party opposing a motion for summary judgment respond to the moving party's statement of facts with "a response to each numbered paragraph in the moving party's statement, including, in *the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon*." L.R. 56.1(b) (emphasis added). Local Rule 56.1 also provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.*

Plaintiffs' Response to LOT's 56.1 statement does not comply with Rule 56.1 as they failed to cite the record in support of any of their denials. Additionally, Plaintiffs' Statement of Additional Facts, contains three conclusory statements which do not assert any facts; instead they merely dispute LOT's various arguments by denying them without any support. (*See* Dkt. 150-3.) Because district courts are entitled to enforce strict compliance with Rule 56.1, Plaintiffs' statement of additional facts and their responses to LOT's statement of facts will be disregarded

and LOT's statement of facts are deemed admitted. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004) (finding that district court did not abuse its discretion when it struck responses to statement of facts that were not compliant with Rule 56.1); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (noting that the Seventh Circuit has "routinely upheld the district court's discretion in requiring parties to comply strictly with local rule requirements.").

As a result, the following facts are deemed undisputed. LOT is an international air carrier based in Poland and operates flights between the United States and Europe, including flights between Chicago and Warsaw, Poland, with connecting services to Lvov, Ukraine and Minsk, Belarus. (SOF ¶ 1.) The United States, Ukraine, and Poland are signatories to the Montreal Convention. (*Id.* ¶ 2.) Plaintiffs are all either citizens or residents of the United States and had reservations on LOT flights between the United States and Europe between May 26, 2013, and July 28, 2015. (*Id.* ¶ 3.)

On September 18, 2013, Plaintiff Margarita Matusova was scheduled to fly on LOT from Minsk to Chicago via Warsaw. (*Id.* ¶ 11.) After arriving in Warsaw, Matusova learned that her flight to Chicago was canceled. (*Id.* ¶ 12.) LOT canceled the flight because it discovered that the aircraft and others like it were missing a fuel filter. (*Id.* ¶ 13.) After discovering the issue at 12:30 pm during a pre-flight inspection, LOT immediately notified Boeing, the aircraft manufacturer, and Rolls Royce, the engine manufacturer. (*Id.* ¶¶ 14-15.) LOT removed the affected aircraft from service after being informed that a special repair crew was needed to address the problem. (*Id.* ¶¶ 15-16.) Due to the removal of the fleet, there were no suitable

aircraft for LOT to operate between Warsaw and Chicago and the flight was canceled. (*Id.*) LOT then searched for the next available flight and re-routed Matusova to Chicago via Frankfurt on a Lufthansa flight the next day. (*Id.* ¶ 17-18; Dkt. 130-2 ¶ 35.) Matusova also received food and a hotel voucher from LOT to accommodate her during the delay. Matusova testified that she spent an additional $112 on food, medication, and a hotel upgrade. (*Id.* ¶¶ 20-21.) Matusvoa testified that she did not have any other economic damages caused by the delay. (*Id.* ¶ 22.)

Plaintiff Maria Sendoun was scheduled to fly on LOT from Lvov to Chicago via Warsaw on August 15, 2013, but during transit learned that her flight from Warsaw to Chicago was canceled due to a mechanical issue with the aircraft. (*Id.* ¶¶ 23-24.) During inspection in Chicago the day before Sendoun's scheduled flight, LOT discovered that the plane was leaking fuel due to damage to the pressure transmitter assembly on one of the plane's engines. (*Id.* ¶¶ 25-26; Dkt. 130-2 ¶ 12.) To address the leak, LOT had to order a part from Boeing in Seattle, replace the plane's moisture line, and conduct testing to ensure the issue was fixed. (*Id.* ¶ 27.) LOT searched for the next available flight for Sendoun and her companion and rebooked them on a direct flight to Chicago from Warsaw the next day and provided her with vouchers for food and a hotel. (*Id.* ¶¶ 29-31; Dkt. 130-1 ¶ 19.) As a result of the cancellation, Sendoun testified that she suffered at least $680 in economic losses,[8] including various out-of-pocket expenses and two days of lost wages. (*Id.* ¶¶ 32-34.)

Although the rest of the plaintiffs were also LOT passengers that had flights delayed or canceled, there is no evidence that their flights were impacted due to unforeseen maintenance issues. Plaintiff Iryna Dochak and her son, Alexandrew Plotnokov, were scheduled to travel from Lvov to Chicago, via Warsaw on LOT on July 16, 2014, but their flight from Lvov to Warsaw was canceled. (*Id.* ¶¶ 4-5.) LOT rebooked Dochak and her son on a flight that arrived

---

[8] Sendoun testified that she paid an additional hotel fee in an unknown amount. (*Id.* ¶32.)

in Chicago on July 17, 2014 at 3:30 pm, approximately 20 hours later than originally anticipated. (*Id.* ¶ 6.) Dochak testified that as a result of the delay, she suffered financial losses between $1,310 and $1,487 in out-of-pocket expenses and lost wages for her and husband. (*Id.* ¶¶ 8-10.) Dochak testified that she paid cash for all of the expenses, did not receive any receipts; she also testified that she that she did not have any other economic losses caused by the delays. (*Id.* ¶¶ 7, 10.)

Similarly, Plaintiff Tetyana Mospan testified that she incurred $491.60 in out-of-pocket expenses and lost wages after her flight from Warsaw to Chicago was delayed by one hour and twenty-five minutes (*id.* ¶¶ 35-39). Plaintiff Natalia Dydych testified that she incurred at least $1,460 in economic losses after her minor children's flight from Chicago to Lvov was canceled and rebooked for four days later, which included more than $1,000 in rent, food, and transportation. (*Id.* ¶¶ 40-48.) Plaintiff Bukovskyy, who flew to Lvov with Ms. Dydych's minor children, testified that as a result of the delay, he spent an unknown amount of money on food and transportation, had lost wages of $240, and his Ukrainian pension reduced by $15.41 per month because he missed a meeting to resolve an issue with his pension. (*Id.* ¶¶ 49-53.) Plaintiff Vasili Kutsko testified that he suffered $530 in economic losses, comprised of out-of-pocket expenses for lodging, food, transportation, and a phone card, after his flight from Warsaw to Chicago was canceled and was a rebooked on a flight the next day. (*Id.* ¶¶ 54-58.) Lastly, Plaintiff Alexandra Kulyk testified that she suffered $1,815 in economic losses after her flight from Warsaw to Chicago was canceled, which delayed her return by one day. (*Id.* ¶¶ 59-64.) According to Kulyk, these losses consisted of lost wages and out-of-pocket expenses for lodging, food, a calling card, medicine, and makeup. (*Id.* ¶ 62.)

# DISCUSSION

## I.    Plaintiffs Matusova and Sendoun

LOT contends that it cannot be held liable for any alleged damages to Plaintiffs Matusova and Sendoun as a matter of law, caused by their delayed travel from Warsaw to Chicago, because the delays were the result of unavoidable mechanical issues and LOT "took all measures that could reasonably be required to avoid the damage" as mandated by the Montreal Convention to be exempted from damages. (Dkt. 130 at 25.) Plaintiffs argue without evidentiary support that this defense is invalid because Defendant made insufficient attempts to secure an alternate aircraft (Dkt. 150 at 14); Plaintiffs were not reasonably accommodated on alternate flights such that they were able to make connecting flights (Dkt. 150 at 13); and Plaintiffs were not adequately compensated for the economic damages they sustained as a result of the delay (Dkt. 150 at 7, 14).[9] Plaintiffs also allege that technical and mechanical problems are not covered by the "extraordinary circumstances" exception to compensation claims filed under EU 261. (Dkt. 150 at 7-11.) *See* Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004, published in the *Official Journal of the European Union*, L 046, 17 February 2004, at 1-8. While LOT draws an analogy to the "extraordinary circumstances" test, it is only to provide context for the Civil Aviation Office (CAO) of the Republic of Poland's conclusion regarding similar claims to those here. (Dkt. 130 at 27.) LOT offers the CAO's conclusions to support its position, but it does not rely on the "extraordinary circumstances" exception to state its case. Therefore, the Court narrows its analysis to United States case law and interpretation of Article 19 of the Montreal Convention, and makes no determination regarding whether LOT's particular delay would qualify as an "extraordinary circumstance" under European Union law nor does it need to do so.

---
.

Article 19 of the Montreal Convention outlines the limits of airline liability for damages caused by delays:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall *not* be liable for damage occasioned by delay *if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures*.

Montreal Convention art. 19 (emphasis supplied). Other district courts interpreting this provision have concluded that "to satisfy Article 19's requirement that all reasonable measures required to avoid the delay be taken, the defendant carrier must show that, on the whole, it took measures reasonably available and reasonably calculated to prevent the subject loss." *Bernfeld v. US Airways, Inc.*, No. 14-CV-5573, 2016 WL 1583057, at *2 (N.D. Ill. Apr. 20, 2016) (citing *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A., Operadora, Sociedad Unipersonal*, No. 11 C 775, 2012 WL 5499426, at *4 (N.D. Ill. Nov. 9, 2012)). In particular, "[t]he failure to take any particular precaution that might have prevented the loss does not necessarily prevent the carrier from relying on this defense; not every possible precaution must be taken." *Giannopoulos*, 2012 WL 5499426, at *4 (quoting *Palma v. Am. Airlines, Inc.,* No. 09-23212-CIV, 2010 WL 5140592, at *5 (S.D. Fla. Dec. 9, 2010)). "Instead, the carrier need only show that 'it took all precautions that, in sum, were appropriate to the risk.'" *Bernfeld*, 2016 WL 1583057, at *2 (quoting *Giannopoulos*, 2012 WL 5499426, at *4). Moreover, other district courts have found that carriers may satisfy the defense by showing that they "took a technically and economically viable measure that was reasonably calculated to avoid the [ ] plaintiffs' delay." *Giannopoulos*, 2012 WL 5499426, at *4.

LOT provides evidence that it took such "reasonable measures" here. According to the undisputed facts, Plaintiffs Matusova and Sendoun had reservations on flights operated by LOT

which included trips from two different eastern European cities to Warsaw, Poland, then on to Chicago, Illinois. (SOF ¶¶ 11, 23-24.) In both cases, Matusova and Sendoun were unable to board their scheduled flights from Warsaw to Chicago due to mechanical problems with their aircraft. (*Id.* ¶¶ 13-16, 25-26) Nevertheless, LOT booked both Plaintiffs on the next available alternate flights to Chicago that departed the next day; Matusova's new flight included an additional leg to her journey, with a layover in Frankfurt, instead of a direct flight from Warsaw to Chicago. (*Id.* ¶¶ 17-18, 29-31. ) LOT also provided both Matusova and Sendoun with food and vouchers for hotel accommodation as compensation for the inconvenience. (*Id.* ¶¶ 20-21, 29-31.) Despite these accommodations, Matusova testified that she spent an additional $112 on food, medication, and a hotel upgrade. (*Id.* ¶¶ 20-21.) Sendoun testified that she incurred at least $680 in out-of-pocket expenses, including local transportation, telecommunication, overnight accommodations, food related expenses, and lost wages. (*Id.* ¶¶ 32-34.)

Although it is undisputed that Matusova and Sendoun encountered discernable inconvenience and some economic damages as a result of LOT's canceled flights, LOT cannot be held liable if the damages occurred *despite* having taken technically and economically viable measures, reasonably calculated to avoid the damage. In making that determination, this Court considers both the airline's attempt to resolve the problematic flight delays and its attempt to accommodate passengers affected by the delay. *See, e.g., Giannopoulos*, 2012 WL 5499426, at *5; *see also, e.g., Rambarran*, 2015 WL 4523222, at *5 ("Measures taken to rebook or otherwise accommodate passengers experiencing delay—as well as measures taken to prevent the original delay-causing events—are relevant to determining liability under Article 19."); *Helge Mgmt., Inc. v. Delta Air Lines, Inc.*, No. CIV.A. 11-10299-RBC, 2012 WL 2990728, at *4 (D. Mass. July 19, 2012) ("In order to satisfy the standard of undertaking reasonable measures, the

defendant carrier need only show that it took "'all precautions that in sum are appropriate to the risk, i.e., measures reasonably available to defendant and reasonably calculated, in cumulation [sic], to prevent the subject loss.'") (quoting *Palma v. American Airlines, Inc.*, 2010 WL 5140592, at *5 (S.D. Fla., Dec.9, 2010)).

On September 18, 2013, Matusova's flight from Warsaw to Chicago was canceled when LOT discovered during a pre-flight inspection that one of the engines on the scheduled aircraft, a Boeing 787, was missing a fuel filter. (SOF ¶ 13.) Upon discovering the missing part, LOT immediately notified the aircraft and engine manufacturers and learned that a special repair crew would need to be sent in to replace the filter. (*Id.* ¶ 14-16.) As a safety precaution, LOT then withdrew its entire Boeing 787 fleet from service, which meant that there were no other available aircraft to make the flight from Warsaw to Chicago that day. (*Id.*) Given that the defect was discovered approximately four hours prior to the scheduled takeoff time, and the manufacturer instructed the airline that the problem required special assistance, based on the undisputed facts, LOT acted reasonably to mitigate the delay while maintaining the safety of the passengers and crew by canceling the flight.

Similarly, on August 15, 2013, Sendoun's flight was canceled due to a mechanical failure in the Boeing 787 scheduled to make the flight from Warsaw to Chicago. (*Id.* ¶¶ 25-26.) In this instance, the pilots discovered en route to Chicago during an earlier flight that the aircraft's two engines were consuming fuel at different rates. (*Id.*) On the ground in Chicago, LOT technicians discovered a fuel leak in one engine's assembly line, which resulted from damage to the engine's pressure transmitter assembly. (*Id.*; Dkt. 130-2 ¶ 12.) To make the repair in this case, a new part needed to be flown to Chicago from Seattle, creating a substantial delay. (*Id.* ¶ 27.) No other aircraft were available on that day in Warsaw to make the flight to Chicago. (*Id.*)

In this case, LOT may have had more time to address the delay, but the undisputed evidence demonstrates that it faced unavoidable limitations regarding the availability of parts and planes, such that it had no choice but to cancel the flight, while maintaining the safety of its passengers and crew. As in *Bernfeld*, the Plaintiffs in this case offer unsupported assertions and no "evidence [to identify] any reasonable measure that [the airline] could have taken, but failed to take, in order to avoid or minimize the delay in [Plaintiffs'] travel." 2016 WL 1583057, at *2.[10]

Therefore, the only question is whether LOT took all reasonable measures to rebook or otherwise accommodate Sendoun and Matusova. Both Plaintiffs accepted LOT's offer to reroute their flights the following day, and the undisputed evidence indicates that LOT worked to rebook Sendoun and Matusova on the next available flight and neither plaintiff presents any evidence that a more favorable booking was available. Instead, the bulk of Plaintiffs' argument focuses on LOT's failure to sufficiently compensate them for their out-of-pocket expenses incurred due to the delay. (Dkt. 150 at 1-4.) The undisputed facts indicate that both Plaintiffs were provided with food and hotel vouchers to accommodate their overnight stay in Warsaw. (Dkt. 131 ¶ 19, 31.) Despite the accommodations, both Plaintiffs testified that they still incurred costs beyond the amount covered by the vouchers: Matusova testified that she incurred $112 in out-of-pocket expenses to upgrade her hotel room and to purchase additional food and medication (Dkt. 131 ¶¶ 20-22); Sendoun, who was traveling with her adult daughter, testified that she incurred total damages of approximately $680, including out-of-pocket expenses for lodging, transportation, telecommunication, medication, and food costs, and also in lost wages for the two days of work she missed as a result of the delay. (Dkt. 131 ¶¶ 32-34).

---

[10] Plaintiffs' broad allegations that LOT failed "to elaborate on the fact why it did not provided a substitute aircraft" and that it did nothing "to substitute said aircraft" (Dkt. 150 at 13-14) are unpersuasive without additional factual support to suggest that the airline had other options available to it.

In both Sendoun and Matusova's cases, the undisputed facts establish that their delays were caused by unavoidable and unforeseen[11] mechanical issues with the aircraft and that LOT took reasonable measures to accommodate the passengers by working to rebook them on next available flights and providing them with food and lodging during the delay. Nevertheless, there is no evidence regarding the value of the vouchers that LOT provided to the Plaintiffs or the percentage of the Plaintiffs' costs the vouchers covered. Without more detailed information as to the level of financial compensation available to Plaintiffs, the Court cannot determine whether LOT took all economically viable measures that were reasonably calculated to avoid the Plaintiffs' damages. Therefore, issues of material fact remain regarding the issue of Matusova and Sendoun's damages only and therefore LOT's motion for partial summary judgment is denied as to this aspect only. Therefore, LOT's motion for partial summary judgment as to Plaintiffs Matusova and Sendoun is granted in part and denied in part.

## II. Damages

In the Court's May 27, 2016 order regarding Defendant's Motion to Dismiss, Plaintiffs were restricted to pursue "economic damages and not [] damages for inconvenience or psychological or physical injuries." Additionally, both parties agree that the Montreal Convention applies here and caps damages at 4,694 Special Drawing Rights[12] per passenger. *See* Montreal Convention, Art. 22(1) ("In the case of damage caused by delay as specified in Article 19 in the carriage of persons, the liability of the carrier for each passenger is limited to [4,694]

---

[11] Although not controlling, claims brought by other passengers on Matusova's and Sendoun's flights were rejected by Poland's Civil Aviation Office ("CAO"), which found that Matusova's flight was canceled due to an unforeseen manufacturing defect that "was a risk to flight safety and occurred suddenly during routine aircraft operation." (Dkt. 152 at 5.) Similarly, the CAO found that Sendoun's flight was canceled due to "a hidden manufacturing defect with constitutes a threat to the safety of flights and the occurrence of which could not have been rationally foreseen by the carrier." *Id.*

[12] Special drawing rights is a weighted average of various convertible currencies created by the International Monetary Fund.

Special Drawing Rights.").  LOT argues that despite testimony indicating lower amounts of damages, Plaintiffs seek the maximum amount of damages allowed under the Montreal Convention, without justification.  Defendants also wish to limit each of the Plaintiffs' maximum awardable damages to the amount of economic loss that they testified to in their depositions.

In their response to LOT's motion, Plaintiffs concede that they only seek provable economic losses and nowhere do they claim to be entitled to the maximum allowable amount under the Montreal Convention.  As a result, the only issue remains as to whether it is appropriate to order, as a matter of law, that Plaintiffs are limited to the amount of economic loss detailed in their deposition testimony.  Even on the facts as presented by LOT, summary judgment on this issues is inappropriate.

As LOT itself points out, there are a number of issues of material fact as to the amount of damages suffered by many of the Plaintiffs.  Based on the evidence presented by LOT, the damages claimed by Plaintiffs are largely indeterminate as they are solely based on their testimony, without receipts or credit card statements.  As a result, many of the claimed damages are estimated by the Plaintiffs.  (*See* SOF ¶¶ 8-10, 40-53) (Plaintiff Bukovskyy, who flew to Lvov with Ms. Dydych's minor children testified that as a result of the delay, he spent an *unknown* amount of money on food and transportation; Plaintiff Natalia Dydych testified that she incurred *at least* $1,460 in economic losses; Dochak testified that as a result of the delay, she suffered financial losses *between $1310 and $1487* in out-of-pocket expenses and lost wages.)  Due to the inexactitude in these claims for damages, a reasonable jury could award more than the amounts that LOT argues should be set as the maximum amount.[13]

---

[13] An examination of the deposition testimony makes the inexactitude of Plaintiffs' estimated damages even more apparent, as there is scant evidence that any of the Plaintiffs kept receipts of their expenses and they had difficulty approximating their economic losses with certainty.  (*See*, *e.g.*, Dkt. 130-6 at 32:11-17 ("Q: Can you approximate how much money you spent on the phone call from Warsaw to Chicago; A: I don't know.  I don't remember.  Q:

LOT also makes it clear that the amount of damages suffered by the Plaintiffs is in dispute, as LOT contests both liability and the the amount of damages claimed by the Plaintiffs. (*See* Dkt. 130 at 19) ("*Notwithstanding questions of causation and credibility*, which LOT leaves to the factfinder, the individual damages that Plaintiffs are entitled to recover in this action should be expressly limited to the amount of damages supported by the record.") (emphasis added). As summary judgment is only appropriate when facts are undisputed, LOT's own disputation of the availability amount of damages precludes summary judgment on this point.

Finally, LOT has not presented any case law to support the ruling it seeks. Although courts frequently limit the types of damages that can be awarded, it is far from clear that it would be appropriate to limit the total available damages to the undetermined amounts as outlined in Plaintiffs' testimony. In fact, "[a]lthough the amount of damages is an issue of fact, this fact is specifically determined by the jury". *Turyna v. Martam Const. Co.*, 83 F.3d 178, 182 (7th Cir. 1996); *see also Fiedler v. Chicago & N. W. Ry. Co.*, 204 F.2d 515, 520 (7th Cir. 1953) ("The question of the amount of damages is primarily a question of fact to be answered by the jury.").

Furthermore, it is possible that following their depositions, Plaintiffs remember other compensable damages. And while changes to their stories following their depositions may impact their credibility, it does not prevent Plaintiffs from testifying in that manner. LOT has not provided any authority to justify a different conclusion. That is because "[t]he proper method of addressing trial testimony that contradicts prior deposition testimony is not by excluding the trial testimony but, rather by impeaching the witness with the inconsistency." *Shutler v. Lake Forest Country Day Sch.*, No. 07 CV 6553, 2011 WL 4007340, at *3 (N.D. Ill. Sept. 9, 2011); *see also W.R. Grace & Co. v. Viskase Corp.*, No. 90 C 5383, 1991 WL 211647, at

---

Was it less than $100? A: Approximately $100, maybe less. Because I called a couple times, not just once, several times. I don't remember exactly.")); (Dkt. 130-6 at 69:12-14 ("Q: did you incur $25 in medical expenses over that four-day period of time? A: Maybe").

*2 (N.D. Ill. Oct. 15, 1991) ("Deposition testimony is simply evidence, nothing more. Evidence may be explained or contradicted."). For these reasons, LOT's Motion for Partial Summary Judgment as to the issue of damages is granted in part and denied in part.

## CONCLUSION

For the reasons stated herein, LOT's Motion for Judgment on the Pleadings and Motion to Dismiss Plaintiffs' Class Certification Claims are granted. LOT's Motion for Partial Summary Judgment is granted in part and denied in part.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 5/30/2017